IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BOBBY JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   18-cv-2212-RJD |
| | ) | |
| LUCAS MAUE, TERRANCE JACKSON, | ) | |
| GARRETT GRIFFIN, CHASE CARON, | ) | |
| JOHN TOURVILLE, and ANTHONY | ) | |
| JONES, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Bobby Johnson, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center.   Plaintiff alleges several prison officials used excessive force against him and/or failed to protect him, resulting in extensive injuries.

Plaintiff's complaint was screened pursuant to 28 U.S.C. § 1915A, and he is proceeding on the following claims (*see* Docs. 9, 26):

> Count One:    Eighth Amendment excessive force claim against Maue, Jackson, Griffin, Coron, Tourville, and Jones for physically assaulting Plaintiff on June 26, 2017.
>
> Count Three:    Intentional infliction of emotional distress claim in violation of Illinois state law against Maue, Jackson, Griffin, Coron, Tourville, and Jones.
>
> Count Four:    Assault and battery claim in violation of Illinois state law against Maue, Jackson, Griffin, Coron, Tourville, and Jones.

The Motion for Summary Judgment filed by Defendants Maue, Jackson, Griffin, Caron, Tourville, and Jones (Doc. 78) is now before the Court.   Plaintiff filed a timely response (Doc.83), and Defendants filed a reply (Doc. 87).   For the following reasons, Defendants' Motion is **GRANTED IN PART AND DENIED IN PART**.

<u>**Factual Background**</u>

At all times relevant, Plaintiff was incarcerated at Menard Correctional Center (Deposition of Bobby Johnson, Doc. 79-1 at 4).   On June 16, 2017, Plaintiff was inside the gym when his recreation time was cut short due to a staff assault that occurred elsewhere in the facility (*id.* at 6).   Plaintiff and the other inmates who were in the gym were made to exit and subjected to "shake downs" (*id.* at 7).

Plaintiff testified that he was "shaken down" by an unknown officer, and then was ordered by Defendant Maue, a correctional officer, to undergo another shakedown (Doc. 79-1 at 7).   Plaintiff testified that he complied and allowed Maue to search him again (*id*).   Maue allegedly then used a racial slur and Plaintiff advised Maue he was going to submit a grievance against him for using the racial slur[1] (*id.*).   Plaintiff testified that Maue then grabbed Plaintiff's arm, and Plaintiff responded by striking Maue with his fist[2] (*id.* at 8).   Maue and Plaintiff then struggled, and Maue wrestled Plaintiff to the ground (*id.*).   Maue restrained Plaintiff's hands behind his back with handcuffs and then struck Plaintiff in the back of his head (*id.*).   This altercation took approximately one minute (Doc. 79-5 at 20).   According to Plaintiff's deposition testimony, after he was on the ground and struck by Maue, other officers responded and Plaintiff was hit with

---

[1] Plaintiff's verified complaint includes a somewhat different version of events leading up to Defendant Maue's alleged use of a racial slur (*see* Doc. 1 at 7-8).   The Court declines to set forth those events in detail as they are not central to the culmination of events that allegedly occurred on June 16, 2017.

[2] As noted by Defendants, Plaintiff did not mention that he struck Maue in his complaint.

foreign objects (Doc. 79-1 at 9).   Pepper spray was deployed during this altercation, which impaired Plaintiff's vision (*id.* at 10).   Plaintiff does not know who hit him when he was on the ground (*id.* at 9).   This altercation took place around 11:00 a.m. (Doc. 79-5 at 13).   Defendant Maue knew Plaintiff had some injuries after this altercation (Doc. 79-5 at 21).

After his altercation with Maue, Plaintiff was escorted to the North 2 segregation unit by two officers, who held Plaintiff by both arms (Doc. 79-1 at 9).   The walk from the gym to North 2 takes approximately one to two minutes (Doc. 79-5 at 23).   During this walk, these officers "rammed" Plaintiff's face and head into the gates and corners of the doors (Doc. 79-1 at 9). During his deposition, Plaintiff identified these officers as Defendants Jackson and Caron (*id.*). In his verified complaint, Plaintiff only identified Defendant Jackson and indicated the other officer was a "John Doe"[3] (Doc. 1 at 9).   Plaintiff was placed in a cell in North 2, uncuffed through the chuckhole, and he washed mace off his face (Doc. 79-1 at 10).   After a brief time, Plaintiff was handcuffed again and moved to an interview room in North 2 (Doc. 79-1 at 10, 12; Doc. 1 at 9).   Plaintiff testified that Jackson and Caron escorted him from the cell to the interview room by pulling him up the stairs (Doc. 79-1 at 11).   In his complaint, Plaintiff alleged he was escorted to the interview room by Defendant Officer Griffin, Sgt. Jones, Lt. Tourville, Officer John Doe, and Lt. John Doe (Doc. 1 at 9).

Plaintiff testified that while he was in the interview room, Defendants Jackson and Caron held Plaintiff's arms while the other officers, including Defendant Lt. Tourville, Griffin, and two unknown officers punched Plaintiff in the face (Doc. 79-1 at 11-12).   Plaintiff also testified that Jones was in the interview room, but he did not specifically testify that Jones engaged in punching

---

[3] Defendants John Does 1 and 2 were dismissed from this action on December 17, 2019 due to Plaintiff's failure move to amend the complaint to identify the defendants or otherwise inform the Court of their identities (*see* Doc. 26).

or otherwise assaulting Plaintiff (*id.* at 16).   In his complaint, Plaintiff alleged Defendant Griffin and an unknown officer held Plaintiff's arms while he was repeatedly punched in the face by Lt. John Doe, Sgt. Jones, and Lt. Tourville (Doc. 1 at 9-10).

Plaintiff was subsequently interviewed by Internal Affairs and was then taken to the healthcare unit around 12:45 p.m. to receive treatment for his injuries (Doc. 79-1 at 13; Doc. 83-4 at 61).   Plaintiff testified he blacked out at some point while in the interview and regained consciousness in the healthcare unit (Doc. 79-1 at 13).   Plaintiff was transported to an outside hospital at 4:35 p.m. (Doc. 83-4 at 72-73).   Plaintiff suffered injuries to his eyes and nose, as well as bruising and lacerations to his face (79-1 at 12).   Plaintiff testified that he underwent surgery to address his injuries and remained in the Menard infirmary until August 1, 2017 (*id.* at 17).

Defendant Lt. Tourville testified that after Maue's altercation with Plaintiff, he escorted Maue to the healthcare unit and both Tourville and Maue were seen in the healthcare unit (Doc. 83-5 at 53).   Tourville testified that he then went to the shift commander's office and typed up his reports, and then left to seek outside medical attention for his injuries at the direction of the shift supervisor (*id.*).

Defendant Maue testified that after the altercation with Plaintiff he was seen in the healthcare unit around 11:15 a.m., and he was instructed to go to an outside hospital (Doc. 79-5 at 22).   Maue testified he was taken to the healthcare unit by an unknown lieutenant and that the unknown lieutenant did not stay at the healthcare unit (*id.* at 24). Plaintiff was charged in Randolph County Circuit Court with Aggravated Battery, a class 3 felony, for striking Lucas Maue in the face with a closed fist (*see* Doc. 79-2).   Plaintiff pleaded guilty to this charge and was sentenced to two years in the IDOC (*see id.*).

According to Menard's Roster Management record, Chase Caron was not present at

Menard on June 16, 2017 because it was his scheduled day off (*see* Doc. 79-6 at 12).   Menard's Roster Management record is less clear regarding Defendant Anthony Jones.   "Anthony B. Jones" appears on the Segregation Unit roster for June 16, 2017, but the name is crossed out and substituted with another name (*see id.* at 24).   It is also documented that "A. Jones" was absent and listed as "Sick" (*see id.* at 32).   However, "Jones, Anthony B." is also listed on the Daily Roster with an "x" below "TAC" (*see id.* at 28).   There is no notation on this page that Jones was not present on June 16, 2017.   Plaintiff asserts this document indicates "Jones, Anthony B." was present.   The Court is not clear as to the meaning of this document, and Defendants do not address the same.   At his deposition, Defendant Jones indicated that he does not recall if he was called in on June 16, 2017 as part of the "tac team" (Doc. 83-2 at 36).   Jones testified, however, that if his name was crossed off of the roster and replaced with another name, then he was not there (Doc. 83-2 at 32).

## Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).   The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact.   *Celotex*, 477 U.S. at 323.   Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).   A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at

248).   In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.   *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

<u>Discussion</u>

***Count One – Eighth Amendment excessive force claim against Defendants Maue, Jackson, Griffin, Coron, Tourville, and Jones***

The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits the "unnecessary and wanton infliction of pain" on prisoners.   *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).   "In cases involving the claimed use of excessive force, 'the core judicial inquiry' is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm'." *Outlaw*, 259 F.3d at 837 (quoting *Hudson*, 503 U.S. at 7).   Prison officials who fail to take reasonable steps to intervene and prevent the use of excessive force may be liable under the Eighth Amendment.   *Wilburn v. Ealey*, 881 F.3d 998, 1008 (7th Cir. 2018) (citing *Young v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)).

<u>**Defendants Tourville, Griffin, Jackson, Caron, and Jones**</u>

Defendants assert that Plaintiff has no evidence to support his claim that Tourville, Griffin, Jackson, Caron, and Jones were involved in the assault that allegedly occurred on June 16, 2017.

Liability under § 1983 is predicated on a defendant's personal involvement in the alleged constitutional violation.   *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (citations omitted).   To be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye."   *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (quoting *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) (citing *Gentry v. Duckworth*,

65 F.3d 555, 561 (7th Cir. 1995)).

Defendant Caron asserts June 16, 2017 was a scheduled day off of work for him and, as such, he was not at Menard on that date and could not have participated in the incidents at issue. In his response brief, Plaintiff does not dispute the records Caron relies on establishing that he was not at Menard on June 16, 2017.   Further, although the Menard roster conflicts with Plaintiff's deposition testimony, courts have indicated that "even on summary judgment the district court should not credit testimony that is inherently incredible," *Simms v. Reiner*, 419 F.Supp. 468, 475 (N.D. Ill. 1976), or "irrefutably contradicted by documentary evidence," *Stewart v. RCA Corp.*, 790 F.2d 624, 628 (7th Cir. 1986).   The Court has no reason to question the validity of the records before it.   Therefore, the Court finds no reasonable jury could find that Defendant Caron was at Menard or participated in the incidents occurring on June 16, 2017 alleged in Plaintiff's complaint. Defendant Caron is entitled to summary judgment on Count One.

Defendant Jones also asserts he was not at Menard on June 16, 2017, and relies on Menard's roster records for support.   The records relied on by Jones, however, are not as clear as the records that support Caron's personal liability argument.   As asserted by Plaintiff, of the three pages wherein Defendant Jones' name appears on Menard's roster for June 16, 2017, one of the three appears to reflect that Jones was or may have been present at Menard on that date (*see* Doc. 79-6 at 28).   Although the record is not entirely clear, it is Defendant Jones' burden to establish that no genuine dispute of material fact exists and that he is entitled to judgment as a matter of law. Because the records relied on by Jones lack clarity, the Court cannot grant summary judgment in his favor on Jones' argument that he lacked personal involvement in any alleged constitutional violation.

Defendant Tourville argues the records do not support a finding that Tourville participated

in the alleged assault that occurred in the North 2 interview room on June 16, 2017.   In support of this argument, Tourville argues that he was seen in the healthcare unit as a result of injuries sustained in an altercation with another inmate, and he then proceeded to an outside medical facility to receive treatment.   This timeline does not "irrefutably contradict" Plaintiff's testimony. As argued by Plaintiff, Tourville's assertion that he was not present in the interview room in North 2 with Plaintiff is a disputed material fact.   Indeed, Tourville has not presented any evidence documenting the time at which he was no longer at Menard.    The incident at issue occurred around 11:00 a.m. and possibly continued until Plaintiff was seen in the healthcare unit at 12:45 p.m. Defendant Tourville authored an Incident Report concerning the June 16, 2017 events at 12:40 p.m. on the same date (*see* Doc. 79-3).   As such, it appears Defendant Tourville was at Menard until at least 12:40 p.m. on June 16, 2017.   Thus, the records relied on by Tourville do not establish that he was not present in the interview room with Plaintiff in North 2 at the time alleged by Plaintiff.   Defendant Tourville is not entitled to summary judgment on Count One on this basis.

Relatedly, Defendants Tourville, Griffin, Jackson, Caron, and Jones argue there is no evidence to support Plaintiff's claims that they used excessive force or assaulted Plaintiff on June 16, 2017.   In support of this argument, Defendants cite to Plaintiff's changing narratives of the events included in his verified complaint and deposition testimony.   The Court notes there are certainly differences in these two narratives that may go to Plaintiff's credibility.   However, the Court is not to weigh credibility at this juncture.   In any event, the Court finds the nature of the differences between the verified complaint allegations and deposition testimony is not dispositive for purposes of summary judgment.

With regard to Defendant Jackson, both Plaintiff's complaint and deposition testimony place Jackson as one of the two officers that escorted Plaintiff from the gym to the North 2

building.  Plaintiff contends that during this time Jackson rammed him into gates and doors. Plaintiff was restrained at this time.  This is sufficient at this stage in the proceedings for a reasonable jury to conclude that Defendant Jackson was involved in the events of June 16, 2017.

Plaintiff also consistently identified Defendants Tourville, Jones, and Griffin in his verified complaint and deposition testimony as present in the North 2 interview room and involved in either punching Plaintiff (Tourville) or, at the very least, holding Plaintiff's arms (Griffin) or doing nothing while others punched Plaintiff (Jones).  Again, this is sufficient at this stage in the proceedings for a reasonable jury to conclude that Defendants Tourville, Jones, and Griffin were involved in the events of June 16, 2017.

For these reasons, Defendants Tourville, Griffin, Jackson, and Jones are not entitled to summary judgment on Count One.

**Defendant Maue**

Defendant Maue asserts that Plaintiff is barred from seeking damages in this lawsuit pursuant to the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994).   In *Heck*, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  *Heck*, 512 U.S. at 487-88.  In other words, under *Heck*, an inmate may not challenge a finding previously established in a criminal or disciplinary proceeding that was essential to the decision in that proceeding.

Maue contends that *Heck* bars Plaintiff's claims against him because Plaintiff pleaded

guilty to a felony charge of aggravated battery on the factual basis that Plaintiff struck Maue in the face with a closed fist.   Defendant Maue contends the timing of Plaintiff's interaction that resulted in Plaintiff's criminal conviction and Maue's alleged use of excessive force are such that *Heck* applies and bars Plaintiff's claims.   Maue further asserts that his use of force was part of an ongoing situation caused by Plaintiff's assault, and that the actions at issue were in response to that assault and resulted from Maue's actions employed to gain control of the situation.

Plaintiff asserts that *Heck* is not applicable and that his plea of guilty to battery and Maue's violation of his constitutional rights are not mutually exclusive.   Plaintiff relies on *McCoy v. Mennerich*, No. 3:18-cv-1297-NJR, 2021 WL 2223783, at *3 (S.D. Ill. June 2, 2021), to support his proposition.   In *McCoy*, the court considered a circumstance wherein the inmate-plaintiff struck an officer and was subsequently restrained.   *Id.* at *1.   Similar to the facts here, the inmate-plaintiff pled guilty to aggravated battery.   *Id.*   On summary judgment, the defendant-officers argued the plaintiff's claims were barred by *Heck*.   The court, however, disagreed.   The court found that the plaintiff freely admitted to striking an officer and that he was subsequently restrained.   *Id.* at *3.   The court found that "[t]he fact that officers were justified in restraining [the plaintiff] does not mean that any level of force would have been justified … [and found that] [i]f officers exceeded the level of force justified by the situation, then [the plaintiff] would still have a claim, and presenting evidence in support of that claim would not be a challenge to his aggravated assault conviction."   *Id.*

The circumstances in *McCoy* are substantially similar to those here.   Plaintiff does not dispute that he struck Maue and was subsequently restrained.   Like *McCoy*, the question presented in Plaintiff's claims is whether the force employed by Maue subsequent to Plaintiff's battery of Maue was excessive.   The Court has reviewed the transcript of Plaintiff's guilty plea (*see* Doc.

Page **10** of 14

79-2) and finds that allowing Plaintiff to proceed against Defendant Maue on his § 1983 claim does not imply the invalidity of his conviction as it does not provide for any defense of Plaintiff's actions.   Plaintiff's claim does nothing to invalidate his admission that he struck Maue. Defendant Maue is not entitled to summary judgment on the basis of *Heck*.

Defendant Maue also asserts that his use of force against Plaintiff was justified under the circumstances on June 16, 2017.   More specifically, Defendant Maue contends that after Plaintiff struck him in the face, he returned strikes in an effort to gain compliance and control of the situation.   As such, Defendant Maue contends his efforts were within constitutional bounds and he had a need to apply force because of the situation.

Defendant Maue is correct that whenever prison officials are accused of using excessive physical force, a court must determine whether the use of force was wanton and unnecessary or applied in a good-faith effort to maintain or restore discipline.   In order to make this determination, a court must examine a variety of factors, including: the need for an application of force; the relationship between that need and the amount of force used; the threat reasonably perceived by the responsible officers; the efforts made to temper the severity of the force employed; and the extent of the injury suffered by the prisoner.   *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).   In this instance, the Court cannot find as a matter of law that the force employed by Defendant Maue was applied in good faith and not for purposes of causing harm.   Although it is clear Plaintiff struck Maue and Maue certainly needed to apply some degree of force to restrain Plaintiff and control the situation, the Court cannot say that Maue's alleged striking of Plaintiff in the back of the head after he was restrained with handcuffs was an appropriate use of force.   This is a question for the jury.

For these reasons, Defendant Maue is not entitled to summary judgment on Count One.

### Qualified Immunity

Generally, government officials are protected from civil liability when performing discretionary functions under the doctrine of qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001). Thus, in order to evaluate a claim of qualified immunity, the Court engages in a two-part inquiry. The first question is whether the defendants' conduct violated a constitutional right. *Volkman v. Ryker*, 736 F.3d 1084, 1090 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (overruled in part by *Pearson v. Callahan*, 555 U.S. 223 (2009)). The second question is whether that particular constitutional right was "clearly established" at the time of the alleged violation. *Id.* The two questions may be considered in either order. *Volkman*, 736 F.3d at 1090 (citing *Pearson*, 555 U.S. at 236-42).

Defendants assert they are entitled to qualified immunity because Plaintiff cannot establish they violated his constitutional rights and, if they were to be held liable on the facts alleged, it would constitute a heightened standard for what constitutes a constitutional violation.

The Court need not consider the question of qualified immunity as to Defendant Caron because the Court has already found Caron was not personally liable for the actions at issue in this lawsuit. With regard to Defendants Tourville, Maue, Jackson, Jones, and Griffin, the Court finds they are not entitled to qualified immunity because it was clearly established at the time of the alleged incidents that applying force in a manner inconsistent with maintaining or restoring discipline implicates an inmate's constitutional rights, and Plaintiff has submitted some evidence establishing the same.

***Counts Three and Four – State law claims of intentional infliction of emotional distress and assault and battery against Defendants Maue, Jackson, Griffin, Coron, Tourville, and Jones***

Defendants argue that because Plaintiff cannot succeed on his Eighth Amendment claims, he cannot succeed on his state law claims.   Insofar as Plaintiff shall proceed at this stage on his Eighth Amendment claim against Defendants Maue, Jackson, Griffin, Tourville, and Jones, he shall be able to proceed on his state law claims (Counts Three and Four) against these Defendants. The Court need not consider these claims any further as Defendants have not set forth any additional argument for summary judgment on these claims.

Insofar as there is irrefutable documentary evidence in the record that Caron was not present at Menard on June 16, 2017 that requires summary judgment in his favor on Count One, Caron is entitled to summary judgment on Counts Three and Four.

## <u>Conclusion</u>

Based on the foregoing, the Motion for Summary Judgment filed by Defendants Maue, Jackson, Griffin, Caron, Tourville, and Jones (Doc. 78) is **GRANTED IN PART AND DENIED IN PART**.

The Clerk of Court shall enter judgment in favor of Defendant Chase Caron and against Plaintiff at the close of this case.

Plaintiff shall proceed on the following claims:

Count One:    Eighth Amendment excessive force claim against Maue, Jackson, Griffin, Tourville, and Jones for physically assaulting Plaintiff on June 26, 2017.

Count Three:  Intentional infliction of emotional distress claim in violation of Illinois state law against Maue, Jackson, Griffin, Tourville, and Jones.

Count Four:   Assault and battery claim in violation of Illinois state law against Maue, Jackson, Griffin, Tourville, and Jones.

**IT IS SO ORDERED.**

**DATED: September 7, 2023**

*s/  Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**