IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BOBBY JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   18-cv-2212-RJD |
| | ) | |
| LUCAS MAUE, TERRANCE JACKSON, | ) | |
| GARRETT GRIFFIN, JOHN TOURVILLE, | ) | |
| and ANTHONY JONES, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Bobby Johnson, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center.   Plaintiff alleges that Defendants used excessive force against him, resulting in extensive injuries. Plaintiff also proceeds on intentional infliction of emotional distress and assault and battery claims against Defendants.

The events at issue in this case occurred on June 16, 2017 at Menard.    Plaintiff was inside the gym when a staff assault occurred elsewhere in the facility.    Plaintiff was "shaken down" by an unknown correctional officer, and then Defendant Maue (also a correctional officer) ordered him to undergo another shakedown.    Plaintiff testified that Defendant Maue used a racial slur against him, and an altercation ensued between the two.    Plaintiff struck Maue with his fist; Maue restrained Plaintiff, and then allegedly struck Plaintiff in the back of the head.    Plaintiff was also sprayed with pepper spray.    Plaintiff testified that he was taken to the "North 2" segregation unit,

where he stuck his head in a toilet bowl to remove the pepper spray.   Later in the segregation unit, Defendant Jackson and another officer held his arms while Defendants Tourville and Griffin (along with other unknown officers) punched him in the face.   Plaintiff received treatment at an outside hospital and underwent surgery related to injuries to his eyes and nose.   Plaintiff pleaded guilty in state court to a charge of Aggravated Battery for striking Lucas Maue in the face with a closed fist.

This matter now comes before the Court on Defendants' Motions in Limine (Doc. 103) and Plaintiff's Motion in Limine (Doc. 101), to which Defendants filed a Response (Doc. 107). Evidence may be excluded in limine if the movant establishes "that the evidence is inadmissible on all potential grounds." *Betts v. City of Chicago, Ill.*, 784 F. Supp. 2d 1020 (N.D. Ill. 2011). Rulings in limine may be reconsidered during trial "as the case unfolds" and "even if nothing unexpected happens at trial."   *Id.*, *quoting Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 565 (7th Cir. 2006).

**Plaintiff's Motion in Limine (Doc. 101)**

**1.  Plaintiff's specific crimes, convictions, and sentences**

Plaintiff asks the Court to bar any references to his "felony criminal convictions, the underlying crimes, and the details of any current or prior sentences."   In a civil case, evidence of a witness's criminal conviction must be admitted for the purpose of attacking the witness's character for truthfulness if the conviction was punishable by death or imprisonment for more than one year.   Fed. R. Evid. 609(a)(1)(a).   However, the Court may exclude evidence of the conviction if "its probative value is substantially outweighed by a danger of…unfair prejudice." Fed. R. Evid. 403.

Of course, the jury will know that Plaintiff was incarcerated at Menard at the time of the

events in question.   In §1983 cases involving conditions of confinement, the undersigned typically allows the jury to hear that the plaintiff was convicted of a felony for which he was incarcerated at the time of the events in question, but does not allow the jury to hear about the particular crime. Defendants object to Plaintiff's motion, noting that Plaintiff was convicted of home invasion and attempted murder in 2004 and was serving time for those convictions at the time of the incident in question.   Defendants contend that the probative value of these specific convictions outweighs prejudice.   The Court is unconvinced by Defendants' argument; the crimes of home invasion and attempted murder are not particularly probative of Plaintiff's truthfulness.   *Cf.* Fed. R. Evid. 609(a)(2).

Defendants also argue Plaintiff's aggravated assault conviction in 2017 related to striking Defendant Maue should be admissible for impeachment because "his credibility is directly at issue in this case."   This argument is nonsensical.   Plaintiff admitted at his deposition in this case that he struck Maue with his fist; that he pleaded guilty to that same act reflects (if anything) his propensity for truthfulness, not the opposite.

Defendants also argue that the aggravated battery conviction "should be introduced because it stemmed directly from the incident at the heart of Plaintiff's claim."   This argument is inconsistent with Defendants' position in a separate trial brief in which they ask the Court to instruct the jury that Defendant Maue can only be liable for events that occurred after Maue had restrained Plaintiff with handcuffs-an argument that is reasonable in light of the Court's summary judgment ruling.   Doc. 88, pp. 10, 11; Doc. 112.   Regarding Plaintiff's claim against Defendant Maue, the issue for the jury to resolve at trial is what happened *after* Plaintiff struck Maue and (as Defendants argue in their brief) after Maue had restrained Plaintiff with handcuffs.   Plaintiff's guilty plea to the events that occurred prior to Maue restraining him is irrelevant.

Plaintiff's Motion in Limine No. 1 is GRANTED IN PART AND DENIED IN PART. For purposes of impeachment, Defendants may introduce evidence that Plaintiff was convicted of a felony for which he was incarcerated at the time of the events in question, but may not introduce evidence of any specific crime(s) or the length of Plaintiff's sentence(s).

Plaintiff also asks the Court to bar any testimony, evidence, or arguments regarding the felony convictions of Adam Titus and Max McCoy, two fact witnesses who will testify on behalf of Plaintiff.   Defendants object, but provide no information to the Court regarding the crimes for which they intend to impeach these witnesses.   For purposes of impeachment, Defendants may introduce evidence that McCoy and Titus were both convicted of a felony for which they were incarcerated at the time of the events in question, but may not introduce evidence of the specific crimes or length of their sentences.

## 2. Visual appearance at trial

Plaintiff asks that the Court allow him to wear plain clothes (not his prison uniform) and be restraint-free during trial.   Plaintiff's Motion in Limine No. 2 is GRANTED IN PART AND DENIED IN PART.   The Court will allow Plaintiff to wear plain clothes and will also attempt to prevent the jury from seeing any restraints on Plaintiff; if possible, the Court will not ask Plaintiff to move from the plaintiff's table in the presence of the jury.   The Court will otherwise defer to the Illinois Department of Corrections, the U.S. Marshals Service, and courtroom security officers regarding necessary restraints.

## 3. References to Plaintiff or other witnesses as "felons, convicts, murderers, offenders, criminals, or prisoners"

Considering that Plaintiff and his witnesses were all incarcerated at the time of the events in question, and considering that the events in question occurred at a prison, it is impractical to ask

the Court, counsel, and Defendants' witnesses to refrain from referencing Plaintiff and his witnesses as "prisoners" or "offenders."   Moreover, Plaintiff fails to support his argument that referring to him and fellow inmates as "prisoners" or "offenders" (as opposed to "inmates") would unfairly prejudice his case.   It is Plaintiff's status as a prisoner that gives rise to his claim under the U.S. Constitution.   This motion is OTHERWISE GRANTED; no references shall be made to Plaintiff or his witnesses as criminals, felons, convicts, or murderers.

**4.  Plaintiff's unrelated disciplinary history**

Defendants do not object to this Motion except to the extent "it attempts to limit testimony about the staff assault that took place on June 16, 2017."   As Plaintiff's motion specifically refers to "entirely unrelated" disciplinary actions, it is GRANTED.

**5.  References to any individual formerly being named as a Defendant**

Plaintiff asks the Court to bar any reference to any individual as a former defendant, or to refer to the dismissal of any defendants from this case.   Defendants object, stating that they "are entitled to point out inconsistencies or gaps in Plaintiff's case, and that includes the fact that some Defendants have been dismissed and he chose to sue some individuals and not others."   Defendants' objection interprets Plaintiff's motion too broadly.   To the extent that Plaintiff's recollection of individuals who were/were not involved in the June 16, 2017 events has changed, Defendants may reference and introduce statements of those inconsistencies.   However, the procedural history of this case and specifically, that some individuals were named and then dismissed, is not relevant and would only serve to confuse the jury.   Plaintiff's Motion is GRANTED.

Defendants contend that they should be allowed to present the "empty chair" defense and reference Plaintiff's failure to name and sue certain individuals who allegedly caused Plaintiff's

injuries.   The Court's order on Plaintiff's Motion #5 should not be interpreted in a way to prohibit Defendants' "empty chair" defense, as Defendants correctly note that each of them can only be liable for his own conduct.   This order merely prohibits counsel and witnesses from referring to the procedural history of this case and whether any individual was previously named as a defendant and dismissed.

### 6.   Jurors' pecuniary interests

Defendants have no objection. Motion in Limine No. 6 is GRANTED.

### 7.   Current and former IDOC employees as adverse witnesses

Plaintiff asks the Court to order in limine that his counsel may call and examine IDOC employees (current and former) with leading questions.   This motion is GRANTED IN PART AND OTHERWISE TAKEN UNDER ADVISEMENT.   Leading questions are proper on direct examination "when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party."   Fed. R. Evid. 611(c)(2).   According to Plaintiff's pretrial disclosures, he may call Defendants to testify during his case-in-chief.   Rule 611 clearly allows Plaintiff to ask the Defendants leading questions during cross exam.   Plaintiff lists only one other witness in his pretrial disclosures: Augusta Williams, who is apparently a current IDOC employee.   The Court will assess whether leading questions are appropriate for Ms. Williams after having the opportunity to judge her demeanor and some of her testimony.

### 8.   Evidence of "general risks faced by correctional officers"

Defendants object to this motion, arguing that it is necessary to explain to the jury why they were following certain policies and procedures at Menard after the first, unrelated staff assault occurred on June 16, 2017, e.g., restraint of inmates, the number of correctional officers present. At the final pretrial conference, Plaintiff had no additional information about the "general risks"

Page **6** of **10**

evidence to which this motion pertains, and without more specific information about the potential evidence, the Court cannot find that it is inadmissible for any purpose.   This motion is DENIED.

**9.   Reference to Plaintiff as anyone but "Mr. Johnson"**

Defendants do not object to this motion, except to the extent that certain IDOC records may be introduced into evidence and refer to Plaintiff by his inmate number.   The Court agrees that Plaintiff's inmate number as used in IDOC records does not unfairly prejudice Plaintiff. Plaintiff's motion is GRANTED to the extent that during trial, neither the Court nor counsel for Defendants shall refer to Plaintiff as anyone but "Mr. Johnson."   However, this motion does not preclude the admission of exhibits that reference Plaintiff using his inmate number.

**10.   Any argument or testimony that "anyone can file a lawsuit"**

Defendants have no objection. This motion is GRANTED.

**11. Some Defendants are no longer employed by IDOC**

Defendants have no objection. This motion is GRANTED.

**12. Defendants' injuries on the day in question**

Defendants object, explaining that evidence of officers' injuries is necessary to explain their state of mind as they determined the amount of force necessary to restrain Plaintiff.   Defendants also note that two of them were receiving medical attention for injuries at the time Plaintiff claims he was beaten in segregation.    At this point, the Court cannot find that evidence of Defendants' injuries is inadmissible for any reason and therefore Plaintiff's motion is DENIED but may be revisited at trial.

**13. Defendants' mental health conditions resulting from the events in question**

Defendants object to the extent this motion seeks to exclude evidence of their state of mind during the events in question.   This motion is GRANTED, but this ruling should not be interpreted

in a way to exclude evidence of Defendants' subjective state of mind as they restrained Plaintiff.

**14. Bolstering Defendants character with testimony or evidence of commendation, awards, or other honors**

Defendants have no objection, unless Plaintiff "opens the door" to their reputation. This motion is GRANTED.

**15. Plaintiff's "striper" uniform**

Plaintiff was a "black striper", meaning he wore a uniform with black stripes that reflected he was either a "weapons violator" or a "multiple staff assaulter." Defendants object to this motion, contending that they intend to introduce prior inconsistent statements by Plaintiff regarding what he and Maue said to each other in the yard, including Plaintiff's status as a "striper." Without more information about these statements, the Court cannot rule on this motion at this time. This motion is TAKEN UNDER ADVISEMENT. The parties should be prepared to discuss this issue on the morning of trial.

**16.  Plaintiff's review of Defendants' photos**

In February 2022, Plaintiff and his court-recruited attorney viewed 59 photographs of various correctional officers who were named on the IDOC roster on June 16, 2017.   This review occurred during the discovery phase of this case and in response to Plaintiff's requests for production.   Plaintiff represents that "due to the policies of IDOC, the photographs were not able to be produced to Plaintiff or Plaintiff's counsel and instead had to be presented to Plaintiff via videoconference with defense counsel present."   Defendants do not disagree with this representation.   Plaintiff now seeks to bar any reference to this review at trial.

Defendants contend that the jury should be able to hear that "the review took place" and

that Plaintiff was unable to identify any John Doe defendants from the review.[1]   Defendants claim that Plaintiff's inability to identify all of his assailants is relevant.   The Court disagrees. Plaintiff's inability to identify pictures of particular officers who allegedly punched him in the face (not long after Plaintiff had been doused with pepper spray and washed his face off in a toilet bowl to remove the pepper spray), nearly five years later, seems to provide little probative value Plaintiff's allegations against Defendants.   This motion is GRANTED.

### 17. Gang involvement

Plaintiff contends that any reference to his alleged involvement in a gang has no bearing on the force used against him after he was handcuffed.   Defendants contend that they should be allowed to "present" that Plaintiff's injuries were sustained as a result of a "reasonable use of force" applied after Plaintiff's initial assault of Defendant Maue. This motion is TAKEN UNDER ADVISEMENT. The Court will hear arguments on the first day of trial.

### DEFENDANTS' MOTIONS IN LIMINE

Plaintiff filed no response to Defendants' motions in limine and had no arguments regarding these motions at the final pretrial conference. The Court grants the following motions, finding that no additional argument is necessary and bars in limine evidence and argument regarding the following subjects:

| | |
|---|---|
| Motion No. 2: | hearsay statements by medical professionals to Plaintiff |
| Motion No. 3: | the State of Illinois will indemnify Defendants |
| Motion No. 5: | other lawsuits against Defendants |

---

[1]  Apart from Defendants' assertion, Defendants do not point the Court to any part of the record that affirmatively indicates Plaintiff could not identify any of the John Doe Defendants. Considering the review of photos took place nearly five years after the events in question, the Court could foresee any number of reasons why the John Doe Defendants were never named in this suit.

| Motion No. 6: | misconduct by Defendants, complaints against Defendants, and reprimand of Defendants not related to the alleged incidents involving Plaintiff on June 16, 2017 |
|---|---|
| Motion No. 7: | the "Golden Rule," that the jury place themselves in Plaintiff's position |
| Motion No. 8: | Plaintiff's own grievances or grievances by other inmates |

The Court takes under advisement Defendants' remaining Motions: (1) Plaintiff's own testimony regarding the cause and extent of his injuries; 4) whether Defendants followed IDOC policies and procedures; (9) testimony by Plaintiff's witnesses (inmates who filed lawsuits for injuries sustained during allegedly similar incidents at Menard on June 16, 2017) regarding their own alleged assaults.   At this time, Defendants have failed to establish that the topics addressed in motions 1, 4 and 9 are inadmissible for any purpose.   Despite Plaintiff's inability to provide meaningful information to the Court at the final pretrial conference on these motions, the issues appear sufficiently critical that a ruling in limine is warranted.   The parties should be prepared to address these motions on the first day of trial, prior to jury selection.

**IT IS SO ORDERED.**

**DATED: January 17, 2024**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**